i'4

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN


UNITED STATES OF AMERICA,
               PLAINTIFF-APPELLEE,


v.
                                            DISTRICT CT. NO: 2:23-CR-181

                                            Case: 2:25-cv-12506
SHEDRICK HAWKINS,
                                            Assigned To : White, Robert J.
               DEFENDANT-APPELLANT.           Referral Judge: Morris, Patricia T.
                                                Assign. Date : 8/12/2025
                                            Description: HC HAWKINS V. RARDIN (TH)


DEFENDANT-APPELLANT'S MOTION FOR RELIEF PURSUANT TO
SECTION 2241(c)(3) TITLE 28 OF THE UNITED STATES CODE.


RESPECTFULLY SUBMITTED,                            DATED: _8_ _7_, 2025

_Shedrick Hawkins_
MR. SHEDRICK HAWKINS, 63025-510
FCI MILAN
PO BOX 100
MILAN, MI. 48160
PETITIONER IN PROPRIA PERSONA

SHEDRICK HAWKINS' INCARCERATION IS UNLAWFULLY PROLONGED
IN VIOLATION OF THE CONSTITUTION OF THE UNITED STATES

I.

INTRODUCTION

[C]OMES NOW, DEFENDANT-APPELLANT, SHEDRICK HAWKINS, in propria persona, and humbly moves this Honorable Court to GRANT the herein habeas action.   Defendant requests that this Honorable Court apply the Rule of Lenity to resolve ambiguity of the Defendant when reviewing the herein action, utilizing a less stringent standard than formal pleadings drafter by professional counsel.  Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed. 2d (1972).

Defendant Hawkins was indicted by a Grand Jury in violation of 21 U.S.C. Sect. 841(A)(1)(& (B)(1)(A)(VI) Possession with the Intent to Distribute Fentanyl & Cocaine (COUNT I); and 18 U.S.C. 922(G)(1) & 924(A) Felon In Possession of a Firearm (COUNT II).  On 09-25-2024, following a plea of Guilty, Defendant Hawkins was thereafter sentenced in the United States District Court for the Southern District of Ohio to a term of 135 months in the Bureau of Prisons.

II.

STANDARD OF REVIEW

Habeas corpus review pursuant to 28 U.S.C. Sect. 2241 is appropriate if a person is "in custody in violation of the Constitution or laws or treatise of the United States." 28 U.S.C. Sect. 2241(c)(3).   In exercising its habeas jurisdiction, this court may consider claims asserting that the BOP has unlawfully delayed a person's transfer to a community-based custodial setting, or is refusing to grant congressionally-enacted earned good time credits under the FSA.  See Muniz v. Sabol, 517 F. 3d 29, 33-34 (1st Cir. 2008); see also Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015)(prisoners may invoke Sect. 2241 "to challenge placement (or lack thereof) in a community confinement center" (citing cases)).  The petitioner bears the burden of proving that his continuing detention violates his federal rights.   See Espinoza v. Sabol, 558 F.3d 89, 89 (1st Cir.. 2009).  When conducting statutory analysis, the Court must first determine whether the meaning of the statute is ascertainable through the text alone.  Barnhart v.

1

Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941 151 L. Ed. 2d 908 (2002). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 340 117 S.Ct. 843, 136 L.Ed. 2d 808 (1997)(citing Est. of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477, 112 S.Ct. 2589. 120 L. Ed. 2d 379 (1992)). Employing various grammatical and structural canons of statutory interpretation will assist this Court in the reading of the text in question. See., e.g., United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 484, U.S. 365, 371-76, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988). This Court's inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." Robinson, 519 U.S. at 340. Is a statute is ambiguous, courts "exercise their independent judgment" to determine the "single, best meaning," but to do so with the agency's 'body of experienced and informed judgment.'...at [their] disposal." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400, 402, 412, 144 S.Ct. 2244, 219 L.Ed. 2d 832 (2024)(quoting Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). The extent to which a court may look to an agency for guidance depends upon "the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." Id. at 388 (quoting Skidmore, 323 U.S. at 140)

Under the old Chevron standard, (Chevron U.S.A. Inc. v. NRDC, 467 IU, 842-43, 104 S.Ct. 2778, 81 L.Ed. 2d 694 (1984)), many prisoners were excluded from the incentivized earned time credits under the First Step Act, based on the BOP's erroneous interpretation of, denial of and non-application of the FSA and subsequent community placement in conjunction with 18 U.S.C. Sect. 3632(d)(4). As relevant to the instant case, Petitioner's FSA ETC's have been forfeited by BOP due to an alleged State detainer, causing him to bypass his projected December 2024, community placement.

According to a recent Supreme Court decision, Chevron is no longer controlling. In Loper Bright Enters v. Raimondo, No. 22-451, 603 U.S. ____, 2024, U.S. LEXIS 2882 (2024); 1144 S.Ct. 2244, 219 L.Ed. 2d 832 (2024), the Supreme Court ruled that the courts must now interpret the Statute and its application to Policy in question, not a federal agency, (i.e., BOP). In short, the BOP is no longer permitted to interpret Congressionally-enacted statutes, such as the FSA. Such responsibility now falls squarely under the purview of the courts.

III.

ANALYSIS

[O]f the sixty-eight categories of ineligibility for time credits in the First Step Act (FSA), five refer to violations of the Controlled Substance Act.  And of those five, where Congress wanted something beyond the conviction-specifically, a sentencing enhancement-to trigger ineligibility, it specified as such.  Three apply only if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense, as determined under the guidelines promulgated by the United States Sentencing Commission.  18 U.S.C.  Sect. 3632(d)(4)(D)(ixv), 18 U.S.C. Sect. 3632 (d)(4)(D)(ixvii), 18 U.S.C. Sect. 3632(d)(4)(D)(ixviii (II)).  It does not state that the provision applies if the sentencing court finds that the death or serious bodily injury resulted; to the contrary, it requires a conviction under 21 U.S.C. Sect. 841 (b)(1)((C) that death resulted, not a sentencing court's findings of those facts.  18 U.S.C. Sect. 3632(d)(4)(D)(iviii).  Where Congress includes a particular language in one section of a statute but omits it in another of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.  Under the FSA, a sentencing enhancement does not trigger ineligibility where  not specified.

The plain language of 18 U.S.C., Sect. 3632(d)(4)(D)(Iviii) considered in its statutory context indicates that it only makes ineligible for time credits those incarcerated individuals who were convicted of the death-resulting enhancement element.  Congress well knows how it instruct judges to look into the facts of crimes.  In other statutes, using different language, it has done just that.  Textualism must be applied equally to all, including those who are incarcerated.

The FSA establishes a system of mandatory time credits for incarcerated individuals who participate in recidivism reduction programming, with limited exceptions.  One such exception, 18 U.S.C. Sect. 3632(d)(4)(D)(Iviii), makes ineligible those individuals convicted of specific  drug offenses WHERE DEATH RESULTED.  This case addresses whether a conviction of a death-resulting enhancement, AND a leadership role is required for this exception to apply, or if it is enough simply to deny a defendant FSA based on facts unsupported by the record.

Congress enacted the FSA in 2018 which, among other mechanisms, established a system of time credits and provided eligible inmates the opportunity to earn these credits for participation in evidence-based recidivism reduction programming and productive activities.  18 U.S.C. Sect. 3632(d)(4)(A).  Under the FSA, the time credits can be applied toward earlier placement in pre-release custody or supervised release.  Id. at Sect. 3632(d)(4)(C).

3

The award and computation of ETC's is mandatory.  See id. Sect. 3632(d)(4)(A)["A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits."]  However, as stated, the FSA deems certain prisoners ineligible to receive ETC's if they are serving a sentence for a conviction under any of the sixty-eight provisions of law enumerated in Sect. 3632(d)(4)(D).  Among those listed is:

> Section 401(a) of the Controlled substances Act (21 U.S.C. 841), relating to manufacturing or distributing a controlled substance in the case of a conviction for an offense described in sub[paragraph (A), (B), or (C) of subsection (b)(1) of that section for which death or serious bodily injury resulted from the use of such substances.  Id. Sect. 3632(d)(4)(D)(lviii).

## IV.

## SUMMARY OF CASE

The Bureau of Prisons told Defendant-Appellant, Shedrick Hawkins, (hereafter, "Defendant"), that he was ineligible to receive First Step Act (hereafter, "FSA") earned time credits because of his conviction under 21 U.S.C. Sect. 841(b)(1)(C), which violates Sect. 841(a)(1)( and 841(b)(1)(A)(vi).   Possession w/ Intent to Distribute 400 grams of more  is, in fact, eligible, pursuant to Sect. 3632(d)(4), as Defendant should not be enhanced for a leadership or organizer role, importing or exporting death or serious bodily injury resulting from Fentanyl.  The "resulting in death" clause is not applicable, as it was not contained in the Information with which he was charged and to which he pleaded.  Moreover, the sentencing enhancements are not in the list of ineligible offenses under 18 U.S.C. Sect. 3632(d)(4)(D).

The question is whether Defendant is ineligible to earn FSA time credits under 18 U.S.C. Sect. 3632(d)(4)(D)(iviii).  Because Defendant was not convicted of the death-resulting or leadership enhancements, this hinges on whether a conviction of such enhancement is required to (ixviii) to apply.   Defendant states that the unambiguous statutory language establishes that (ixviii) only applies when a defendant is convicted of such offenses.    Defendant can only be ineligible under said provision if that provision is understood to include conduct, of which he was not charged, or pleaded guilty to.

Using BOP's administrative remedy process, Defendant challenged his ineligibility classification and submitted and appealed remedy requests to escalating levels within BOP.  Defendant alleges that throughout this process, various BOP officials provided differing and unsatisfactory information about his eligibility status.   Following his final administrative appeal, Defendant files the instant pro se petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan under 28 U.S.C. Sect. 2241, asserting that BOP's action violates the FSA because his conviction does not make him ineligible to earn time credits.

There is little thoroughness in BOP's consideration of (ixviii)'s applicability to Defendant at any level of his administrative process.   BOP deemed Defendant ineligible based on "sentencing monitoring computation data" and a "Technical Reference Manual", and later stated that he had been "coded [] as auto-ineligible, but it did not at all engage with his well-presented argument that he was never charged with, convicted of,  or pleaded guilty to death-related or leadership offenses/enhancements.   Throughout Defendant's administrative remedies, the BOP failed to meaningfully defend its interpretation of (iviii) in response to  the statutory interpretation of the provision, or the factual nature thereof.

V

DISCUSSION

The managerial role disqualification provision of the FSA states that prisoners serving a sentence for a fentanyl conviction under 21 U.S.C. Sections 841(b)(1)(A)( or 841 (b)(1)(B) will be deemed ineligible to earn FSA time credits if:

(I) the offense involved a mixture or substance containing a detectable amount of [fentanyl]...

AND

(II) the offender was an organizer, leader, manager, or supervisor OF OTHERS IN THE OFFENSE, as determined under the guidelines promulgated by the United States Sentencing Commission, 18 U.S.C. Sect. 3632(d)(4)(D)(ixviii).

5

In the above language, the conjunction "AND" conjoins (I) and (II).  This means that both elements of the provision (I) and (II), must be met in order to disqualify Defendant from receiving FSA ETC's.   It is undisputed that in Mr. Hawkins' case, this was not at issue, as he was never charged, nor pleaded guilty to being in any type of organizer, leadership, managerial, or supervisorial role in his drug offenses, nor was such language listed in the charges on the criminal Indictment.    See United States v. Maitland, No. 4:20-cr-24 (E.D. Va. Nov. 16, 2020).

The part of the FSA listing the offenses that render prisoners ineligible to earn time credits, see 18 U.S.C. Sect. 3632(d)(4)(D), includes two types of disqualifying fentanyl convictions: namely, offenses that are disqualifying ONLY IF THE SENTENCING COURT has found that the prisoner played a managerial role in the fentanyl offense; and the per se disqualification at issue (Sect. 3632(d)(4)(D)(ixiv)), which applies when the prisoner is serving a sentence for a fentanyl offense under 21 U.S.C. Sect. 841(b)(1)(A)(vi) or (B)(vi).

i. BOP's Statutory Misapplication of FSA:

Pursuant to Sect. 3632(d)(4)(D) (ixviii), Defendant is excluded from receiving FSA ETC's only if (1) he was sentenced under Sect. 841(b)(1)(A) or (B), the sentencing court found that the offense involved a mixture or substance containing a detectable amount of fentanyl; "AND" (3) Defendant was given points under USSG Sect. 3B1.2 as an organizer, leader, manager, or supervisor of others in the offense.  As an initial matter, Defendant was not charged with, convicted of, or pleaded guilty to the death-resulting enhancement or the leadership enhancement, as such factors are not part of the factual record.  See Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct., 1254, 161 L.Ed. 2d 205 (2005)["look to the terms of the charging document, [and] the terms of a plea agreement" to determine the elements of the offense].  Here, Defendant was not given points under USSG 3B1.2 and thus his offense does not qualify him for exclusion from receiving FSA points.

Under the rule of lenity, the exclusion language of subsection (ixviii) applies rather than the more restrictive language of subparagraph (ixvi), because any offense involving a mixture or substance of 40 grams or more (the base amount for Sect. 841(b)(1)(B) sentence) containing a detectable amount of fentanyl by definition is sentenced under Sect. 841(b)(1)(B)(vi)

Section 841(b)(1) leaves no room for judicial discretion. If a person violates 21 U.S.C. Sect. 841(a) and the violation involves a substance specified in one of the Sect. 841(b)'s subsections, that person shall be sentenced according to the subsection corresponding to the substance. Thus, if the controlled substance contains a detectable amount of fentanyl, it must be sentenced according to Sect. 841(b)(1)(A)(iv) if the substance weighs more than 100 grams and Sect. 841(b)(1)(A)(vi) if the substance weighs more than 40 grams. Hence, Sect. 3632(d)(4)(D)(ixvi) includes all of the same offenders within its sweeps who may be subject to (ixvii) if they happen to have USSG Sect. 3B1.12 enhancements as well. Subsection (ixvi) makes subsection (ixviii) surplusage, just as subsection (ixviii) renders (ixvi) surplusage. If (ixvi) is controlling, it would completely swallow the limitations on exclusion of (ixviii) and render (ixviii) surplusage. If a statute includes language "reasonably susceptible to different interpretations," courts attempt to discern Congress's intent by employing canons of statutory construction." United States v. Jackson, 964 F.3d 197, 201 (3d Cir. 2020). There are three canons of construction applicable in this case. First the court must give effect to all the words of the statute and construe statutory language to avoid interpretations that would render any phrase superfluous. Second, the court must read adjoining clauses in harmony to give effect to the provision as a whole. Third, and most important, canon is the rule of lenity. In short, when interpretting an ambiguous criminal statute, the court should resolve the ambiguity in the defendant's favor. The rule of lenity applies in those situations in which a reasonable doubt persists about a statute's intended scope even after resort to language and structure, legislative history, and motivating policies of the statute. The rule of lenity applies not just to substantive criminal statutes, but to guidelines and other statutes that affect how long persons should languish in prison. see United States v. Nasir, 17 F. 4th 459, 473 (3d Cir. 2021).

In the context of inmate eligibility for ETC's, the unambiguous statutory language of 18 U.S.C. Sect. 3632(d)(4)(D)(iviii) establishes that Sect. 3632(d)(4)(D)(iviii) only applies when a defendant is convicted of the death-resulting enhancement in 21 U.S.C. Sect. 841(b)(1)(C) where death or serious bodily injury results from substance use. The penalty provision 21 U.S.C. Sect. 841(b)(1)(C) covers both situations when death results and when it does not. Sect 841(b)(1)(C)'s death-resulting enhancement is an element that must be alleged IN THE CHARGING DOCUMENT and proven beyond a reasonable doubt-or-pleaded guilty to. The death-resulting enhancement in Sect. 841(b)(1)(C) applies to each of 21 U.S.C. Sect. 841(b)(1)'s subsections:   21 U.S.C. Sect. 841(b)(1)(A); (b)(1)(B), and (b)(1)(C).

7

The Supreme Court has interpreted the word conviction to indicate that Congress meant to cover a generic offense, implicating the categorical framework. In other context, the word conviction refers only to what the defendant had been convicted of and is not about what the defendant had actually done or the facts of the crimes. This is in contrast to a statute containing language that refers to specific circumstances or conduct, where the Court has determined that Congress meant to allow the circumstance-specific approach's more searching factual inquiry concerning an offense. The language U.S.C. Sect. 3632(d)(4)(D)(iviii) indicates that Congress intended for a categorical approach to apply.   The word conviction is repeated twice in the pertinent FSA provisions, without any language referring to underlying circumstances or conduct, thus barring a broader factual inquiry.

Under the canon of statutory interpretation known as meaningful variation, where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea. Thus, Congress' choice to use language like conviction in one subsection and conduct or nature underlying an offense in another subsection requires different readings.

As stated, in the FSA, some categories of ineligibility is triggered only if the conduct that led to the conviction involved a substantial risk of death or serious bodily injury. Other categories reference a conviction specifically, * such as the provision at issue and another that states it applies only if the conviction involved a weapon of mass destruction. Congress' choice to specify in some categories that conduct that led to the conviction triggers ineligibility, and the others that only the conviction triggers ineligibility, must be considered an intentional choice, and that distinction given practical difference. This distinction supports an unambiguous reading that Sect. 3632(d)(4)(D)(iviii) only applies to those convicted of the death resulting enhancement.   See Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed. 2d 908 (2002)[The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."]   Employing grammatical and structural canons of statutory interpretation helps guide the courts in the reading of the text. See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 371-76, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988).

CONCLUSION

In the instant matter, it cannot be overstated that the Defendant was never charged with death or serious injury resulting from fentanyl,  nor was he charged with, convicted of, or pleaded guilty to any type of leadership role; nor was such factual finding(s) included in the Indictment.   Nevertheless, BOP is denying him FSA ETC's based of such criteria.   The word "conviction" here is paramount.   The language of (iviii) indicates that Congress intended for a categorical approach to apply.  The word "conviction" is repeated twice in the pertinent FSA provision, without any language referring to underlying circumstances, BOP interpretation,  or conduct, thus barring a broader factual inquiry.  This becomes more salient through the lens of the meaningful variation canon.  Under this canon of statutory interpretation, "where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea."  S.W. Airlines Co., v. Saxon, 596 U.S. 450, 457-58, 142 S.Ct. 1783, 213 L.Ed. 2d 27 (2022).  Thus, Congress' choice to use language like "conviction" in one subsection and "conduct" or "nature" underlying an offense in another subsection requires different readings    Thus variation is present among the FSA's sixty-eight categories of ineligibility.  Two categories explicitly reference a broader factual inquiry by stating that ineligibility is triggered "only if the conduct that led to the conviction involved a substantial risk off death or serious bodily injury" (to which BOP claims Defendant is guilty when he is not),  or if that conduct involved a managerial, leadership or supervisorial role, (to which Defendant was never charged).

As relating to the above, of the sixty-eight categories of ineligibility, five refer to violations of the Controlled Substance Act   And of those five, where Congress wanted something beyond the conviction-specifically, a sentencing enhancement-to trigger ineligibility, IS SPECIFIED AS SUCH.  Three apply only "if the offense, as determined under the guidelines promulgated by the U.S. Sentencing Commission." 18 U.S.C. Sections 3632(d)(4)(D)(ixviii II))  But the categories at issue includes no similar language.  It does not state that the provisions applies "if the BOP feels they should apply."  On the contrary, it requires a conviction under those statutes.  Hence, under the FSA, a sentencing enhancement does not trigger ineligibility where not specified.   If textualism is for anyone, it must be for everyone, including those who are incarcerated. Miles v. Anton, 42 F. 4th 777, 782 (7th Cir. 2022).    See also, Valladares v. Ray, 130 F.4th 74; 2025 U.S, App. LEXIS 4352 (4th Cir. 2025).

Here, the aforementioned argument leads to the conclusion that ineligibility under (iviii) is limited only to those convicted of the death-resulting enhancement element. BOP may not look to other uncharged facts, as Defendant was not charged or convicted of neither the fentanyl death element, or the leadership element. Because this is precisely what BOP has done, it unjustly prolongs Defendant's incarceration, which is contrary to the U.S. Constitution. The Supreme Court has repeatedly analyzed the specific terms in federal statutes to determine whether Congress intended for an element- or fact-based approach to apply, also known as the categorical or circumstance-specific approach. United States v. Price, 777 F.3d 700, 708 (4th Cir. 2015).

Defendant Hawkins is being unjustly denied ETC's due to the Bureau of Prison's misapplication of federal law pursuant to the First Step Act. His current offense of Possession with the Intent to Distribute 400 grams or more of fentanyl did not result in death and thus violates the plain language of FSA as it is not in the enumerated list for ineligible offenses under Sect. 3632(d). Moreover, Defendant has never been charged with, convicted of, or pleaded to any leadership. supervisory or managerial role, to which BOP is unjustly utilizing to deny ETC's, thereby prolonging his imprisonment

The validity of BOP's reasoning for denying Hawkins FSA ETC's is flawed, as demonstrated above. An analysis of the statute provides a conclusion contrary to that which BOP applied in his case. Accordingly, even if the court were to believe (ivxiii) was ambiguous, BOP would not be entitled to deference under Skidmore, (supra).

Congress passed the FSA to reform the criminal justice system and expand opportunities for those, such as Mr. Hawkins  But instead of granting Hawkins the opportunities for which he is eligible, BOP adopted an untenable interpretation of the statute to bar Hawkins, and others similarly situated, from earning time credits for participation in recidivism reduction programming. In contravention of Congress' command, BOP's interpretation strips defendants of the incentive to participate in these programs to better themselves and attain skills they need to be productive members of society. That contradicts the text of the FSA.  The exception provided for in Sect. 3632(d)(4)(D)(iviii) only applies to those who have been convicted of the death-resulting enhancement element. Hawkins was not convicted of the death-resulting enhancement under Sect. 841(b)(1)(C). Therefore, the (iviii) provision does not apply to Hawkins, and he is eligible to ETC's.

10

RELIEF

FOR ALL OF THE FOREGOING REASON, DEFENDANT-APPELLANT, SHEDRICK HAWKINS, do hereby move this

Honorable Court to grant Sect. 2241 relief by Ordering the Bureau of Prisons to permit Hawkins to participate in

FSA programming as an eligible candidate for ETC's.


RESPECTFULLY SUBMITTED,                                          DATED: __8__ __7__, 2025

_Shedrick Hawkins_
MR. SHEDRICK HAWKINS


CERTIFICATE OF SERVICE


   On this __7th__ day of __August 2025__, I, SHEDRICK HAWKINS, did place in the U.S. Mail located at FCI Milan, one copy
of the herein action to the following:

_Shedrick Hawkins_
MR. SHEDRICK HAWKINS

**UNITED STATES DISTRICT COURT**
FOR THE EASTERN DISTRICT OF MICHIGAN
555 THEODORE LEVIN UNITED STATES COURTHOUSE
231 W. LAFAYETTE BOULEVARD
DETROIT, MICHIGAN  48226

**KINIKIA D. ESSIX**
CLERK OF THE COURT
313-234-5051

Dear Customer:

The Court cannot process your check no. _____19-756183502_____, in the amount of $ _____5.00_____.
Due to strict financial controls, we cannot accept the following:

☐ Checks not payable to "U.S. District Court"

☐ Post-dated checks

☐ Unsigned checks

☐ Checks in the wrong amount

        ☐ The attorney admission fee is $318.00

        ☐ The fee to file a civil action is $405.00

        ☐ The fee to file a Notice of Appeal is $605.00

        ☐ Other:

☐ Checks sent to us as payment for a service without including a copy of the invoice, or the invoice number

☐ Checks as payments for certain fees (there are no motion, jury demand or garnishment filing fees in U.S. District Court)

☐ Checks sent to the court pursuant to a garnishment order in a civil case. Garnished funds are to be made payable to the prevailing party and sent to that party's attorney. Please see the Writ of Garnishment that you received for more information.

☐ Damaged checks

☑ Other: Please include proper paperwork for a Habeas case with the payment.

Please contact us if you have any questions.

Yours Sincerely,
Kinikia D. Essix, Clerk

By: _____
Deputy Clerk/Cashier

Date: July 25, 2025 _____

Shedrick Hawkins # 63025510
F.C.I Milan
P O Box 1000
Milan, Michigan 48160



RECEIVED
AUG 1 2 2025
CLERKS OFFICE
DETROIT

U.S. MARSHALS

United States Eastern District Court
Clerk of Court
Theodore Levine Courthouse
231 W. Lafayette Blvd. Room 599
Detroit, Michigan 48226

